No. 24-2007

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

SHANNON WAYNE AGOFSKY,

*Plaintiff-Appellant*,

v.

FEDERAL BUREAU OF PRISONS, ET AL.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of Indiana, No. 2:24-cv-00051-JPH-MKK
(Hon. James P. Hanlon)

## **REPLY BRIEF FOR APPELLANT**

Kathryn Ali
Meghan Palmer
ALI & LOCKWOOD LLP
501 H St NE, Suite 200
Washington, D.C. 20002
(202) 651-2475
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Plaintiff-Appellant*
*Shannon Wayne Agofsky*

October 16, 2024

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................3

   I.   Mr. Agofsky Is Likely to Succeed on the Merits of his Claim That BOP Has Unlawfully Amended Its Immediate Family Visitation Policy. ..............3

   II.   Mr. Agofsky Is Likely to Succeed on His Claim That BOP's Enforcement of a Prior Relationship Requirement, Contrary to Its Own Longstanding Policy and Written Regulations, Was Arbitrary and Capricious ...................................................................................................9

   III.   Mr. Agofsky Is Likely to Succeed on His Claim That Defendants Have Arbitrarily and Permanently Denied Him the Ability to Visit with His Family Member, in Violation of His First Amendment Rights. ..................20

   IV.   The Remaining Factors Favor Granting Preliminary Injunctive Relief........23

CONCLUSION..................................................................................................28

CERTIFICATE OF COMPLIANCE.....................................................................30

CERTIFICATE OF SERVICE .............................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Air Transport Ass'n of America, Inc. v. F.A.A.*,
  291 F.3d 49 (D.C. Cir. 2002) ................................................................8

*Am. Wild Horse Pres. Campaign v. Perdue*,
  873 F.3d 914 (D.C. Cir. 2017) .........................................................9, 27

*Amadei v. Nielsen*, 348 F. Supp. 3d 145 (E.D.N.Y. 2018) .......................6

*Bagdonas v. Dep't of Treasury*, 93 F.3d 422 (7th Cir. 1996)........................ 14, 15

*Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986) ....................................10

*Camp v. Pitts,* 411 U.S. 138 (1973) ........................................................13

*Citizens to Save Spencer Cnty. v. E.P.A.*, 600 F.2d 844 (D.C. Cir. 1979)................9

*Consumer Fed'n of Am. v. U.S. Dep't of Health & Human Servs.*,
  83 F.3d 1497 (D.C. Cir. 1996) ...........................................................14

*Cook Cnty., Ill. v. McAleenan*, 417 F. Supp. 3d 1008 (N.D. Ill. 2019) ..................25

*Cook Cnty., Ill. v. Wolf*, 962 F.3d 208 (7th Cir. 2020) .................................... 10, 25

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)........................................................................ passim

*Doe v. Lieberman*,
  No. 20-cv-2148, 2022 WL 3576211 (D.D.C. Aug. 11, 2022).............................15

*Easterling v. Thurmer*, 880 F.3d 319 (7th Cir. 2018)...........................................20

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................24

*Environmentel, LLC v. F.C.C.*, 661 F.3d 80 (D.C. Cir. 2011) ...............................10

*Envtl. Def. Fund., Inc. v. Costle*, 657 F.2d 275 (1981)...........................................15

*Greater Boston Television Corp. v. F.C.C.,* 444 F.2d 841 (D.C. Cir. 1970)............9

*Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*,
  56 F.4th 437 (7th Cir. 2022) ...............................................................24

*Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655 (7th Cir. 2015) .......................28

*Jones-El v. Berge*, 374 F.3d 541 (7th Cir. 2004).......................................................27

*Lone Mountain Processing, Inc. v. Sec'y of Lab.*,
  709 F.3d 1161 (D.C. Cir. 2013).................................................................................9

*Make the Road New York v. Pompeo*,
  475 F. Supp. 3d 232 (S.D.N.Y. 2020) .......................................................................24

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ...................................................6

*Milligan v. Pompeo*, 502 F. Supp. 3d 302 (D.D.C. 2020) ................................. 24, 25

*Nat'l Env't Dev. Ass'n Clean Air Project v. E.P.A.*,
  752 F.3d 999 (D.C. Cir. 2014)..................................................................................10

*Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Sullivan*,
  979 F.2d 227 (D.C. Cir. 1992)................................................................................6, 8

*Olivares v. Transp. Sec. Admin.*, 819 F.3d 454 (D.C. Cir. 2016)...........................15

*Rhea Lana, Inc. v. United States*, 925 F.3d 521 (D.C. Cir. 2019).........................14

*S.E.C. v. Chenery Corp.,* 318 U.S. 80 (1943) ...........................................................19

*Shawnee Tribe v. Mnuchin*, 984 F.3d 94 (D.C. Cir. 2021)....................................23

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011)................................................23

*St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961)....................................28

*Taylor v. Westly*, 488 F.3d 1997 (9th Cir. 2007) ....................................................23

*Turner v. Safley*, 482 U.S. 78 (1987) ....................................................... 20, 21, 22

*Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020).....................................6

*Williams v. Edwards*, 87 F.3d 126 (5th Cir. 1996) .................................................26

**Statutes**

5 U.S.C. § 706(2)(D)....................................................................................................3

18 U.S.C. § 3623(a)(2)...............................................................................................26

18 U.S.C. § 3626(a) ...................................................................................26

18 U.S.C. § 3626(a)(1)...............................................................................27

**Rules**

28 C.F.R § 540.44(a)........................................................................... passim

*Visiting Regulations: Prior Relationship*, 68 Fed. Reg. 10656 (Mar. 6, 2003)........4

**Constitutional Provisions**

First Amendment to the U.S. Constitution ...................................................... 20, 23

# INTRODUCTION

In the three years that Mr. Agofsky persistently sought an in-person, non-contact visit with his wife before filing this litigation, Defendants continually gave him one determinative reason why the request was denied: he could not satisfy the prior relationship requirement. Defendants repeatedly quoted this rule to him: "The inmate must have known the proposed visitor(s) prior to incarceration." SA-017, SA-019. That contravenes the BOP's own binding visitation regulations, which have a prior relationship requirement for friends and associates but not for immediate family (such as spouses), and, in fact, have a strong presumption that family visitation will be allowed.

Defendants now attempt a wholesale revision of the administrative record. They say they did not impose a prior relationship requirement, they were merely "requesting additional information," and further claim they had never-before-mentioned security concerns about Mr. Agofsky's request. But neither contention finds any support in the agency record. In fact, Defendants do not even try to defend their position on the basis of the contemporaneous record, which speaks volumes. Instead, they rely on a made-for-litigation declaration. But that declaration is both barred under black-letter law and contradicted by the record, which not only contains none of the supposed security concerns that Defendants now rely on, but also

affirmatively reflects a single dispositive reason for the agency's decision: failure to satisfy the prior relationship requirement.

Defendants assert, incorrectly, that litigation affidavits are permissible if they come from the relevant agency decisionmaker. But as the very cases they rely on demonstrate, when the administrative record reflects the determinative reason for agency action, an agency may not later introduce *new* reasons during litigation. That is precisely what Defendants attempt here.

Despite the clarity of the administrative record on the basis for the decision, Defendants now say the visit was denied because Mr. Agofsky did not have prior approval to get married and is trying to exploit a "loophole" in BOP's visiting rules. This is a red herring. For one thing, BOP recognizes Mr. Agofsky's marriage. In any case, no loophole exists: Defendants could easily have invoked lack of approval for a marriage as a basis to deny an immediate family visit request, but they didn't. Across six denials spanning multiple years and decisionmakers, they relied *only* on the prior relationship requirement.

Defendants spend much of their brief disputing an argument Mr. Agofsky has never made. Mr. Agofsky does not seek to preclude BOP from considering anything about a potential visitor, or even from asking *whether* the visitor has a prior relationship with the prisoner. All he seeks is an injunction requiring BOP to apply

their regulations as written—which, in this case, means not enforcing a categorical prior relationship requirement on an immediate family member.

Mr. Agofsky is currently suffering irreparable harm from the permanent denial of an in-person, non-contact visit with his wife, and an injunction requiring BOP to follow its own regulations could not possibly undermine the public interest. This Court should reverse.

## ARGUMENT

### I. Mr. Agofsky Is Likely to Succeed on the Merits of his Claim That BOP Has Unlawfully Amended Its Immediate Family Visitation Policy.

As explained in his opening brief, Op. Br. 21–26, a preliminary injunction is warranted because Mr. Agofsky is likely to prove that Defendants constructively amended their visitation regulations in violation of the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706(2)(D). Section 540.44(a), the provision that applies to immediate family members, does not contain a prior relationship requirement, unlike Section 540.44(c), the provision that applies to friends and associates. Not only are immediate family members not subject to that eligibility requirement, Section 540.44(a) also contains an unusually strong presumption that they will be allowed to visit. *See* 28 C.F.R § 540.44(a) (stating immediate family "are placed on the visiting list, absent strong circumstances which preclude visiting"). BOP affirmed in its 2003 rulemaking that "[t]he prior relationship requirement does not apply to immediate family members." *Visiting Regulations: Prior Relationship*, 68 Fed. Reg.

10656, 10657 (Mar. 6, 2003). It issued this clarification in response to the very concern at play in this case—that a prisoner might acquire a new family member while incarcerated, and then be unable to add them to their visiting list. *See* Op. Br. 7–8.

When Defendants responded to Mr. Agofsky's immediate family visit request, they quoted the prior relationship requirement to him and told him he must prove that he had a prior relationship with his spouse. SA-017 (quoting rule and requiring "[p]roof of prior relationship"); SA-019 (same). In denying one of Mr. Agofsky's many appeals, the Warden stated that he must review Mr. Agofsky's visit request "under the *prior relationship requirement*." SA-032 (emphasis added), using the same term BOP had used in its 2003 rulemaking when it disclaimed that such a requirement applied to immediate family.

Adding a new eligibility requirement to the immediate family visitation regulation plainly would require notice and comment. *See* Op. Br. 21–23 (collecting cases). Defendants have never disputed that. They dispute only whether they have in fact amended the regulation. *See* Resp. Br. 40–43. But the record strongly suggests that they have. *See* Op. Br. 24–25.

Defendants' response brief ignores one of the most powerful pieces of evidence: their own words. In their administrative responses to Mr. Agofsky, Defendants uniformly told him that his immediate family request was subject to the

prior relationship requirement, and they presented it as a general requirement applicable to any request like his. *See* SA-017 (quoting prison policy documents stating that "[t]he inmate must have known the proposed visitor(s) prior to incarceration"). This response was reviewed, repeated, and affirmed, all the way up to the highest levels of BOP. *See* SA-019, SA-021, SA-027, SA-032. High-level BOP decisionmakers rejected Mr. Agofsky's arguments that the prior relationship requirement did not apply, and affirmed that officials had acted in accordance with policy. *See id.* Taking its own words at face value, BOP's operative rule is that potential visitors from a prisoner's immediate family must prove a prior relationship.

Defendants argue that this claim fails because adjudications are not subject to notice and comment. *See* Resp. Br. 40–41. True, but irrelevant. Mr. Agofsky's constructive amendment claim does not challenge an adjudication, it challenges the unannounced amendment to Section 540.44(a). *See* Op. Br. 30. Mr. Agofsky's complaint is clear that the agency action challenged in his first claim is an unpublished policy change. Compl. ¶¶ 10–11, *Agofsky v. Fed. Bureau of Prisons, et al.,* No. 1:23-cv-01511 (D.D.C. May 25, 2023) (stating that BOP "has never publicized [its] new policy" but that Plaintiff "learned of [it]" when he submitted his visitation request), *see also id.* ¶¶ 52–60 (setting forth constructive amendment claim based on this unpublished policy change). Courts have sustained similar challenges to unannounced regulatory amendments that are revealed to the public not through

formal announcement but through the agency's conduct and treatment of individual adjudications. *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 239, 243–44 (S.D.N.Y. 2020) (granting preliminary injunction in APA challenge to agency's "*sub silentio* shift in policy*"* revealed through trends in ICE's disposition of individual custody determinations); *see also Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165–66 (E.D.N.Y. 2018) (inferring existence of a policy from agency behavior and finding it subject to APA challenge). It is well-established that the notice and comment requirement applies equally to formal amendment, as well as other agency actions that alter the binding standards that regulated parties are subject to. *See Nat'l Family Planning & Reproductive Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 241 (D.C. Cir. 1992) (holding that agency pronouncement formulated as only an interpretation, but which "repudiates or substantially amends the effect of the previous rule," is subject to notice and comment); *see also Mendoza v. Perez*, 754 F.3d 1002, 1021, 1024 (D.C. Cir. 2014) (holding guidance letters which "alter[ed] the standards imposed on" regulated entities were substantive rules requiring notice and comment).

Mr. Agofsky's visit request is one piece of evidence that BOP has altered its binding visitation standards, but far from the only one. Defendants applied the same amended rule to another prisoner's (Mr. Troya's) similar request, denying his request because he too met his spouse while incarcerated. *See* Op. Br. 25. Defendants dispute the import of this evidence, suggesting that Mr. Agofsky's and Mr. Troya's

cases may just be two examples of case-specific exercises of discretion. *See* Resp. Br. 41–42. But that is not an accurate characterization of either case. In both, officials imposed a categorical, generally applicable prior relationship requirement, and then denied the requests for failure to satisfy it. *See* SA-017; SA-019; Troya Decl., *Troya v. FBOP,* No. 1:22-00767 (D.D.C. Mar. 21, 2022), ECF No. 3-2 ¶¶ 13–16. There was no case-specific consideration at all.

Defendants seek to minimize the importance of Mr. Troya's case as only one other suit. *See* Resp. Br. 42. But identical treatment of another individual, based on the same anomalous read of the regulations, is powerful evidence of routine practice, particularly alongside the other evidence in the record.

The Terre Haute Institution Supplement to the BOP Visiting Regulations provides further evidence that there is an across-the-board prior relationship requirement for immediate family. That policy document says immediate family must be verified on a prisoner's Presentence Investigation Report (PSI), and therefore that their relationship must have predated incarceration. *See* ECF No. 43-4 at 2. The Institution Supplement shows that applying a prior relationship requirement to immediate family is the norm and the official policy of the facility.

Defendants respond that BOP Institution Supplements are not subject to notice and comment. *See* Resp. Br. 42. That is beside the point, because Mr. Agofsky is not challenging the Institution Supplement directly—he is challenging an

amendment to a codified regulation. He cites the Institution Supplement only as additional evidence that the way he was treated was not an isolated occurrence, but consistent with general policy at his facility.[1]

Defendants' sole argument for why the Institution Supplement does not conflict with Section 540.44(a) is that the Warden retains discretion to add an immediate family member who does not appear on a prisoner's PSI to the visiting list. Resp. Br. 42–43. But a prior relationship requirement that can be waived by special dispensation from the warden is still a prior relationship requirement. And it's the exact form of the prior relationship requirement that the regulation imposes on friends and associates, and which BOP assured the public did not apply to immediate family.

All of these facts indicate an unannounced rule change. It is irrelevant that Defendants did not explicitly cite 28 C.F.R. § 540.44(a) in their responses to Mr. Agofsky. *See* Resp. Br. 41. It is not the agency's choice of words that matters for purposes of APA review, it is the substance of their action. *See Nat'l Family Planning & Reproductive Health Ass'n, Inc.*, 979 F.2d at 237–38 ("The label that

---

[1] Defendants also overlook a crucial exception to the general rule that BOP Program Statements are not subject to notice and comment. Where they, in substance, purport to amend a legislative rule, they are very much subject to notice and comment. *See Air Transport Ass'n of America, Inc. v. F.A.A.*, 291 F.3d 49, 55 (D.C. Cir. 2002) ("[I]t is well established that an agency may not label a substantive change to a rule an interpretation simply to avoid the notice and comment requirements."); *see also* Op. Br. 29 (collecting additional cases).

the particular agency puts upon its given exercise of administrative power is not, for our purposes conclusive; rather it is what the agency does in fact." (quoting *Citizens to Save Spencer Cnty. v. E.P.A.*, 600 F.2d 844, 879 n.171 (D.C. Cir. 1979))).

## II. Mr. Agofsky Is Likely to Succeed on His Claim That BOP's Enforcement of a Prior Relationship Requirement, Contrary to Its Own Longstanding Policy and Written Regulations, Was Arbitrary and Capricious.

As explained in Mr. Agofsky's opening brief, if this Court decides that BOP didn't amend 540.44(a), then this is an open-and-shut case of arbitrary and capricious agency decisionmaking, because BOP's treatment of Mr. Agofsky plainly conflicts with its longstanding policy and written regulations. *See* Op. Br. 31–41.

This is so for two reasons. First, it is well-established that when an agency decides to change existing policy, "the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) (collecting caselaw); *Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161, 1164 (D.C. Cir. 2013) ("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." (quoting *Greater Boston Television Corp. v. F.C.C.,* 444 F.2d 841, 851 (D.C. Cir. 1970))). And here, Defendants' longstanding policy, as they clearly stated in 2003, is that the prior relationship requirement does not apply to immediate family visit requests. And yet, Defendants told Mr. Agofsky that he "must have known [his wife]

prior to incarceration" and that he would "need to prove" a prior relationship. SA-017. Along with all the other evidence Mr. Agofsky enumerated above, this reflects a policy change and therefore violates the APA.

Defendants assert that this claim is a "repackage[ing]" of Mr. Agofsky's constructive amendment claim, and therefore have no additional response. *See* Resp. Br. 39. That is wrong. Even if this Court were to find that Defendants' policy change was not subject to notice and comment, BOP still would have to acknowledge and explain it—something it failed to do. *See Cook Cnty., Ill. v. Wolf*, 962 F.3d 208, 230 (7th Cir. 2020); Op. Br. 31–33.

And even if this Court were to conclude that BOP has not changed its policy at all, its action here still violated the APA, because if BOP hasn't changed policy, then Defendants enforced a prior relationship requirement against Mr. Agofsky that he should not be subject to under Section 540.44(a). In other words, Defendants failed to comply with their own binding regulations, which is, by definition, arbitrary and capricious. *See Nat'l Env't Dev. Ass'n Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("[A]n agency action may be set aside as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" (quoting *Environmentel, LLC v. F.C.C.*, 661 F.3d 80, 85 (D.C. Cir. 2011))); Op. Br. 33–35 (collecting additional cases). As this Court recognized in *Caldwell v. Miller*, "[a]n

inmate . . . has the right to expect prison officials to follow its policies and regulations." 790 F.2d 589, 609–10 (7th Cir. 1986).

Defendants do not address any of this caselaw. Instead, they offer up a different version of events—one that ignores the robust administrative record documenting Defendants' actual basis for their decision. By Defendants' telling, they did not impose a prior relationship requirement, but were just requesting more information on whether the Agofskys had a prior relationship. *See* Resp. Br. 31–33. Charitably put, this explanation is fanciful. Defendants did not merely seek information for further consideration or ask an open-ended question that invited Mr. Agofsky to provide information about the history of their relationship. They quoted a rule to him: "The inmate must have known the proposed visitor(s) prior to incarceration." SA-017. They told him the rule applied to him: "Your prospective visitor will need to prove that you had a relationship prior to incarceration." *Id.* And they then instructed him to provide certain documents to prove that pre-incarceration relationship.

BOP then continued to enforce that eligibility requirement, even after Mr. Agofsky protested it didn't apply. In his appeals, Mr. Agofsky repeatedly argued his spouse should not be subject to a "prior relationship rule." SA-018. Rather than clarify that they were not imposing a requirement, as Defendants now say, or explaining to Mr. Agofsky that they were merely inquiring into *whether* the

Agofskys knew each other previously and the circumstances of their relationship, Defendants doubled down: The Warden quoted the same prior relationship rule to Mr. Agofsky, and said he had to satisfy it. SA-019 (Warden's response, quoting same rule and requiring same proof); *see also* SA-032 (Warden's subsequent letter confirming "prior relationship requirement" applies to Mr. Agofsky). This series of events cannot reasonably be construed as a mere open-ended inquiry. Defendants' entire argument on this claim, that it was "reasonable" for them to inquire into whether the Agofskys knew each other before Mr. Agofsky's incarceration, *see* Resp. Br. 28, ignores what Defendants actually did and said here.

Additionally, nowhere do Defendants address the stark contradiction between their regulations, their explicit statement in 2003 that the prior relationship requirement does not apply to immediate family members, and their repeated contemporaneous statements to Mr. Agofsky that he had to satisfy a prior relationship requirement. Instead, they try to sidestep this problem by misstating Mr. Agofsky's position. *See* Resp. Br. 33. Defendants say Mr. Agofsky has argued that "Section 540.44(a) *affirmatively precludes* the Bureau from considering whether a prior relationship existed," *id.* (emphasis added), and that he seeks to "bar the Bureau from asking about a prior relationship," *id.* at 34 n.2, and "limit[] . . . what information the Warden may take into account," *id.* at 35. But Mr. Agofsky has never made any of these arguments. In fact, he has stated explicitly several times that it is

*not* his position that BOP is barred from considering anything. *See, e.g.*, ECF No. 33-1 at 26; ECF No. 45 at 14–15. All Mr. Agofsky argues is that the Bureau may not impose a prior relationship requirement on his immediate family visitation request. Defendants would of course be free to ask any questions about his request and take that information into account. The point is that they haven't done so.

In light of the irreconcilable conflict between BOP's regulations and what Defendants did in this case, it is unsurprising that Defendants make no attempt to defend their version of events based on the contemporaneous administrative record. Instead, they (and the court below) rely entirely on an improper, post-hoc declaration submitted after Mr. Agofsky filed this lawsuit. *See* Resp. Br. 37–39; SA-011–12. That violates black-letter law which clearly provides: "When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,'" it "may not [later] provide new ones." *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (quoting *Camp v. Pitts,* 411 U.S. 138, 143 (1973)) (declining to consider post-hoc explanation on this basis); *see also* Op. Br. 39–40, 44–45.

Yet that is precisely what Defendants seek to do: backfill the record with brand new rationales—that not only are absent from the record but also are wholly inconsistent with the specific reason that actually appears in the record. The reasons given in the Royer Declaration—drafted after this litigation was filed— were that

(1) Mrs. Agofsky is a foreign national, (2) Mr. Agofsky didn't get advance approval for his marriage, and (3) Mr. Agofsky's prior violent conduct. ECF No. 15-2 ¶ 8. These reasons are nowhere in the contemporaneous administrative record. Nor does the record even hint at other factors at play. Officials gave Mr. Agofsky a single, dispositive reason for his denial: failure to prove prior relationship.

Defendants argue that the declaration is permissible because it comes from an agency decisionmaker, Resp. Br. 37–39, but their own caselaw defeats this argument. Although post hoc declarations may be permitted in very limited circumstances when they elaborate on or are consistent with the contemporaneous agency record, agencies may not use them to substitute new reasons for those that actually appear in the record. In *Rhea Lana*, the D.C. Circuit considered a declaration because it "largely echoe[d] the rationale contained in the contemporaneous record," but also affirmed that it would be improper to consider "post hoc materials when they present an 'entirely new theory.'" *Rhea Lana, Inc. v. United States*, 925 F.3d 521, 524 (D.C. Cir. 2019) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Health & Human Servs.*, 83 F.3d 1497, 1507 (D.C. Cir. 1996)). Similarly, in *Bagdonas v. Dep't of Treasury*, 93 F.3d 422 (7th Cir. 1996), this Court considered a litigation affidavit because it was consistent with a robust administrative record reflecting the agency's contemporaneous investigation. *Id.* at 427. But the Court noted that any post hoc explanations "ought to be viewed critically" and "assessed, not standing

alone, but in light of the entire administrative record." *Id.* (cleaned up); *see also Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016) ("The critical point is that the Vara Declaration contains 'no new rationalizations'; it is 'merely explanatory of the original record,' and thus admissible for our consideration." (quoting *Envtl. Def. Fund., Inc. v. Costle*, 657 F.2d 275, 285 (1981))). The lesson of Defendants' own cases is clear: An agency may not give new reasons for its actions in court, especially when the contemporaneous administrative record is clear on what the dispositive reason was. That is precisely the situation here, and it was error for the district court to consider the Royer declaration.[2]

As explained in Mr. Agofsky's opening brief, the new reasons from the Royer declaration are also implausible on their own terms. Op. Br. 47. Though Defendants now claim that the lack of prior approval for the marriage is an impediment to approving the request, they have long recognized the marriage as valid. Resp. Br. 27–29; SA-032. Nor does Mr. Agofsky's criminal history make sense as a reason to deny the visit. BOP allows Mr. Agofsky visitation, so they have deemed it possible

---

[2] To the extent Defendants are arguing that post hoc rationalizations are barred only when they come from lawyers rather than from agency decisionmakers, *see* Resp. Br. 38, the Supreme Court has rejected that exact argument. In *Regents*, the Court clarified that the rule is a "prohibition on *post hoc* rationalizations, not advocate rationalizations, because the problem is the timing, not the speaker." *Id.* at 23; *see also Doe v. Lieberman*, No. 20-cv-2148, 2022 WL 3576211, at *5 (D.D.C. Aug. 11, 2022) (explaining that *Regents* held that the prohibition on post hoc rationalizations "applies with equal force regardless of whether the explanations are offered by counsel or the agency itself" (cleaned up)).

to afford him visitors while maintaining security. ECF No. 6-1 ¶ 9. And if BOP wanted to make prior violent conduct—a factor that presumably applies to everyone on death row (and thousands of other people in BOP custody)—a bar to visitation it could have, or could have had a separate visitation policy for death row prisoners, but it hasn't done so. Death row prisoners in BOP custody are subject to the same regulations as everyone else.

Defendants argue this request is different because Mrs. Agofsky is a foreign national, but BOP has never claimed a general prohibition on foreign nationals visiting, nor has BOP said that it cannot conduct a background check on people from other countries. It has claimed only that it cannot conduct a "thorough" background check on Mrs. Agofsky, Resp. Br. 28, without explaining what that means, why it is insufficient, or why BOP never even tried to run the check on Mrs. Agofsky (who years ago submitted her German identification, passport, driver's license number, application forms, and all other information BOP asked for, ECF No. 6-1 at 6–21). BOP's criminal history check form requests the country of citizenship of the applicant, so clearly they can, and do, run checks on non-U.S. citizens. *Id.* at 7.[3] All

---

[3] And if foreign citizenship alone was disqualifying for applications to visit BOP facilities, it is especially odd that Defendants would not have mentioned this earlier: Defendants have known Mrs. Agofsky's nationality since her very first request in 2020. ECF No. 6-1 at 6–7.

three of Defendants' belated rationales for the visit denial, therefore, do not stand up to scrutiny.

Defendants also dispute—again relying entirely on the post hoc declaration—that the record reflects reflexive application of a prior relationship rule. Resp. Br. 35–36. But they could not make this argument—and do not even try to—on the basis of the contemporaneous administrative record. *See generally* Resp. Br. 35–37. Defendants' five written denials issued at the time of the actual decision undeniably demonstrate enforcement of exactly the "categorical, default requirement" that Defendants admit the immediate family regulation lacks. *See* Resp. Br. 35.[4]

In another distortion of the record, Defendants suggest that Mr. Agofsky is to blame for the visit request denial because he failed to answer Defendants' "inquiry" about whether he knew his wife before his incarceration. Resp. Br. 37 n.4. This statement is blatantly contradicted by the record (even setting aside the inaccuracy of framing Defendants' responses as an "inquiry" rather than enforcement of a prior

---

[4] Defendants' assertion that "Agofsky himself acknowledged that security concerns were at issue in his appeal to the Office of the General Counsel" is baffling. *See* Resp. Br. 36. In his administrative appeal, Mr. Agofsky stated that "no security claim was raised" as to his request. SA-023. BOP had not flagged any security concern whatsoever with his visit request, and that was the reason he was appealing the denial. *Id.* Mr. Agofsky reiterated that the sole reason that the visitation request was denied was failure to prove prior relationship. *Id.* That he recognized that the prior relationship requirement is rooted in security considerations as a general matter in no way suggests that he "acknowledged that security concerns were at issue *in his [own] appeal*," Resp. Br. 36.

relationship requirement). Defendants have had—since, at the very latest, December 2020—documented confirmation that the Agofskys had no prior relationship. *See* ECF No. 6-1 at 12 (application for visit with a box checked indicating no prior relationship); *see also* SA-028, SA-034 (letters to warden from Mr. Agofsky's habeas counsel stating that the Agofskys did not have a prior relationship). It is not Mr. Agofsky's failure to provide information that has stymied consideration of his request—it is Defendants' enforcement of a rule that their own regulations confirm does not apply.

Defendants assert that in light of the reasons given in the post hoc declaration, any remand to the agency would be "pointless." *See* Resp. Br. 39. That is wrong, for several reasons. First, the same caselaw cited above confirms that even on remand, an agency cannot simply give new justifications for its previous actions; it would have to engage in new agency action (so here, it would have to reconsider the visit request). *See Regents*, 591 U.S. at 24 (precluding DHS from "cutting corners to allow [it] to rely upon reasons absent from its original decision").

The Supreme Court has firmly rejected the notion that a remand to enforce procedural requirements—even where it may not change the outcome—is "pointless." The remand that Mr. Agofsky seeks here is not "an idle and useless formality," but rather "serves important values of administrative law," including agency accountability and facilitating "orderly functioning of the process of review."

*Regents*, 591 U.S. at 22 (cleaned up). The Court has warned that "[p]ermitting agencies to invoke belated justifications . . . can upset 'the orderly functioning of the process of review,' forcing both litigants and courts to chase a moving target." *Regents*, 591 U.S. at 23 (quoting *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 94 (1943)). That is exactly what is happening here: Mr. Agofsky has been chasing a moving target since 2020, when Defendants told him he needed to prove a prior relationship, which he could not do. Allowing BOP's decision to stand based on post hoc litigation affidavits would give a stamp of approval to lawlessness in BOP operations: BOP can misapply its own regulations, give prisoners any justification for denying a visit request, no matter how inappropriate, and then still prevail in court so long as it later comes up with security justifications for the decision.

A remand would also afford meaningful relief in a practical sense. Defendants have never considered Mr. Agofsky's visitation request without a prior relationship requirement. To the extent BOP has concerns about when or how Mr. Agofsky met his spouse, Mr. Agofsky could easily supply this information. But as the record shows, Defendants have neither asked for nor considered this information, they just told him he had to prove a fact they knew he could not, dead-ending the process.

This underscores the need for an injunction to correct the anomalous agency procedures employed here.[5]

## III. Mr. Agofsky Is Likely to Succeed on His Claim That Defendants Have Arbitrarily and Permanently Denied Him the Ability to Visit with His Family Member, in Violation of His First Amendment Rights.

Mr. Agofsky has also raised a meritorious claim that Defendants violated the APA through agency action that infringed his First Amendment rights. Prison officials may not "permanently or arbitrarily deny[] an inmate visits with family members." *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018) (per curiam); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (restriction on constitutional right to associate with family permissible only if it is "reasonably related to legitimate penological interests"). Yes, prisoners have more limited freedom of association than the general public, but they nevertheless retain this constitutional protection, and BOP regulations grant—and encourage—immediate family visitation.

Here, everything about Defendants' response to Mr. Agofsky's family visit request was arbitrary. As already explained, Defendants' own regulations and public statements affirm that there is no prior relationship requirement for immediate

---

[5] Defendants inaccurately state that Mr. Agofsky "does not dispute" that the Warden's ultimate visiting determination is committed to agency discretion. Resp. Br. 36 n.3. In fact, Mr. Agofsky explained in his opening brief that the visitation determination does not fall within the extremely narrow exception for decisions "committed to agency discretion by law." *See* Op. Br. 41 n.4. In any event, this was not a basis for the district court's decision, and Defendants do not argue that any of Mr. Agofsky's claims are non-justiciable.

family visit requests, and yet they mechanically applied one to deny Mr. Agofsky's request. There also is no evidence in the contemporaneous record of any individualized security concerns with Mrs. Agofsky, or even any individualized consideration of the request—Defendants just rejected the request for failure to provide proof of prior relationship.

Once again, Defendants' response rests on their post hoc declaration. *See* Resp. Br. 45–46. But the declaration is just as improper for use here. *See* Op. Br. 44–47. Mr. Agofsky's third claim—like his other two—is an APA claim, subject to the normal rules of judicial review of agency action. In fact, the principle is even stronger in the *Turner* context, where courts have emphasized the importance of constraining prison officials to the reasons they gave at the time they took an action, as opposed to litigation-based post hoc explanations. *See* Op. Br. 45–46 (collecting caselaw, to which Defendants do not respond).

In attempting to defend the denial as reasonably related to penological interests, Defendants repeat many of the same arguments rooted in their unreasonable interpretation of the record. Defendants say they were merely "requesting more information about [Mr. Agofsky's] relationship with his wife," Resp. Br. 45, as opposed to mechanically enforcing a categorical eligibility requirement. But, as already discussed, *supra* § II, this is not what they actually did. If Defendants needed to know "how Agofsky met his wife, during what time period

and under what circumstances," *see* Resp. Br. 46, they could have asked that, rather than telling him they "d[idn't] have the authority to approve" the visit because he hadn't "prove[n] . . . a relationship prior to incarceration." SA-017; *see also* SA-019, SA-021, SA-032.

Defendants also argue that they didn't arbitrarily deny the visit request because the denial might not be permanent. Resp. Br. 48. The record tells a very different story: Mr. Agofsky has appealed the visit denial through every possible avenue, urging Defendants to lift the prior relationship requirement and consider his request. Among other things, Mr. Agofsky's habeas counsel sent a letter to the Warden requesting reconsideration, writing that "Mr. Agofsky did not have a relationship with his wife prior to entering the BOP." SA-028. Defendants cannot credibly claim to still be awaiting "additional information about his prior relationship with his wife" or an "opportunity to evaluate" their prior relationship. *See* Resp. Br. 48. The denial was clearly permanent, and the Court should disregard Defendants' late-breaking arguments to the contrary, which they made for the first time in response to this litigation.

Defendants do not address any of the other *Turner* factors but, it bears repeating, these too favor Mr. Agofsky. *See* Op. Br. 47–49. Most notably, there's an obvious, easy alternative to BOP's arbitrary denial here: simply complying with Section 540.44(a) as written.

## IV. The Remaining Factors Favor Granting Preliminary Injunctive Relief.

As explained in Mr. Agofsky's opening brief, the equitable factors also strongly favor granting preliminary relief. Op. Br. 50–52. The district court did not reach them, but this Court can, and should. The equities arguments have now been thoroughly briefed in three courts, and Mr. Agofsky's motion for a preliminary injunction—on an urgent matter of family visitation for a man on death row—was originally filed a year and a half ago. This Court should address this issue, rather than further protract these proceedings. *See, e.g.*, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (granting preliminary relief after rejecting argument that the court should remand to the district court to consider preliminary injunction factors in the first instance, given that the issue was fully briefed and urgent).[6]

The improper denial of Mr. Agofsky's visitation request on a basis contrary to BOP regulations constitutes irreparable harm on multiple different dimensions. Already nearly five years have gone by since the Agofskys married, and still they have not been able to have an in-person, non-contact visit. Mr. Agofsky is on death

---

[6] Defendants assert that the district court must consider the equities factors in the first instance. *See* Resp. Br. 49 n.7. The only case they cite says nothing of the sort. *Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011), concerns whether a court of appeals can affirm a grant of a preliminary injunction based on likelihood of success on an entirely different legal theory than that presented to the district court. That bears no resemblance to this case. The weight of caselaw in fact suggests that this Court may reach the equities in the first instance. *See Shawnee Tribe*, 984 F.3d at 102; *Taylor v. Westly*, 488 F.3d 1997, 1201–02 (9th Cir. 2007) (considering several factors in the first instance and reversing denial of preliminary injunction).

row, and every day that passes without seeing his wife imposes a significant cost. They cannot get that time back. As many courts have held, family separation is an irreparable injury. *See Make the Road New York v. Pompeo*, 475 F. Supp. 3d 232, 268 (S.D.N.Y. 2020) (collecting cases). On top of that, "the loss of First Amendment freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 451 (7th Cir. 2022) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added).

Defendants ignore this dispositive caselaw, opting instead to minimize the harm that Mr. Agofsky is suffering. *See* Resp. Br. 51–52. Defendants assert that relief will be "equally effective" at the conclusion of district court proceedings. Resp. Br. 51. That argument is hard to take seriously given the nature of Mr. Agofsky's deprivation, and, not surprisingly, contradicts a robust body of caselaw establishing that harm in the family separation context cannot be fully compensated by reunification at a later date. *See Make the Road New York*, 475 F. Supp. 3d at 268 (collecting cases). Even a temporary family separation is a serious, irreparable harm. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 321 (D.D.C. 2020) (rejecting argument that there was no irreparable harm from family separation because plaintiffs' ability to reunite with their family was "not forever foreclosed").

Defendants also argue that a preliminary injunction would not remedy Mr. Agofsky's harm, reasoning that all he would obtain is the opportunity for reconsideration of his visit request. *See* Resp. Br. 51–52. That misses the point. Mr. Agofsky believes—and the record supports—that it's highly likely that Mrs. Agofsky would be allowed to visit if Defendants followed their own rules and properly considered the request. In any event, if the visit is ultimately denied, then the Agofskys will at least have clarity about what their future will look like. For that reason, courts have rejected the exact same argument that Defendants make here: A plaintiff does not need certainty of success to show irreparable harm from denial of the opportunity to pursue family reunification. *See Milligan*, 502 F. Supp. 3d at 321 (finding family separation due to refusal to consider visa applications to be irreparable harm despite possibility that the applications would ultimately be denied).

The public interest factors, too, are straightforward. As explained in Mr. Agofsky's opening brief, the public interest is served when agencies are required to follow their own rules. *See* Op. Br. 51; *Cook Cnty., Ill. v. McAleenan*, 417 F. Supp. 3d 1008, 1029 (N.D. Ill. 2019), *aff'd sub nom. Cook Cnty., Ill. v. Wolf*, 962 F.3d 208 (7th Cir. 2020) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.") (citation omitted).

Defendants' argument that the public interest cuts against preliminary relief rests entirely on a misstatement of the relief Mr. Agofsky seeks. Mr. Agofsky has requested an injunction prohibiting Defendants from imposing a categorical prior relationship requirement; he is not trying to "bar the Bureau from considering certain information" or "constrain[] the Bureau's discretion," Resp. Br. 49. The injunction would merely require BOP to apply its own rule as written. And as written, that rule affords BOP discretion to deny a request where "strong circumstances preclude visiting." 28 C.F.R. § 540.44(a). BOP would of course retain that discretion. Defendants' argument that the injunction would be "in significant tension" with the deference courts must afford prison administrators, Resp. Br. 50, rings especially hollow given that BOP *itself* has until recently read the regulation exactly as Plaintiff does, and as the requested injunction would mandate. *See* Op. Br. 52. And even if BOP granted the request, the visit would be a non-contact visit during which Mr. Agofsky would be shackled and separated from his wife by a pane of plexiglass.[7]

_____

[7] Defendants are wrong to suggest that a preliminary injunction would be inappropriate because this case implicates prison conditions. Resp. Br. 50–51 (citing 18 U.S.C. § 3626(a), which puts certain limits on preliminary relief in prisoner cases). The injunction Mr. Agofsky seeks would require BOP only to hew to its regulations as codified, which is narrowly drawn and non-intrusive relief, as the statute requires. To the extent Defendants suggest it is Mr. Agofsky's burden to preemptively argue that his desired relief comports with 18 U.S.C. § 3623(a)(2), that is incorrect; the district court could easily ensure the requirements are satisfied when fashioning the preliminary injunction. *See Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir. 1996) ("The district court has fashioned no prospective relief and the

Defendants' own arguments are contradictory. If, as they argue, BOP could just deny the visit request on remand after an injunction based on security justifications, then it makes little sense to suggest that the injunction would infringe BOP discretion and ability to keep its facilities secure.

Defendants also assert that—to the extent Mr. Agofsky's challenge is rooted in the agency's failure to explain its denial—an injunction would be inappropriate even at the conclusion of the case. Resp. Br. 52. This argument relates to, at most, one of Mr. Agofsky's three claims (and, in fact, to only one of his two legal theories for why the agency's action was arbitrary and capricious), and Defendants appear to concede that an injunction would be appropriate relief if Mr. Agofsky succeeds on any of the other claims.

And even as to that one relevant legal theory, Defendants are wrong that the only appropriate remedy would be remand for additional explanation. At minimum, this Court can and should vacate the amended policy and the denial of Mr. Agofsky's request, decided under the procedurally improper new policy. *See Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 931–32 (D.C. Cir. 2017); *see also Johnson*

---

provisions of the Act have yet to be triggered in this case."). Additionally, this is the first time that Defendants have raised 18 U.S.C. § 3626(a)(1) in this litigation, even though the parties have fully briefed the preliminary injunction issue in two previous courts. This Court should therefore refuse to consider the argument, as it has done before on similar facts. *See Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004).

*v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015) ("[V]acatur is the presumptive remedy for a violation of the Administrative Procedure Act.").

Defendants conclude with another version of their "pointless remand" argument. Resp. Br. 52–53. But, like any other agency, BOP is bound by the APA, and its admonition that it may deny Mr. Agofsky's request if this case is remanded is not a basis to excuse the agency from following its own rules. On the contrary, this situation is precisely why the APA's procedural protections exist; "the Government should turn square corners in dealing with the people." *Regents*, 591 U.S. at 24 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)).

## CONCLUSION

This Court should reverse the district court's denial of Plaintiff's motion for a preliminary injunction and vacate the denial of his visitation request.

Dated: October 16, 2024

Respectfully submitted,

/s/ *Meghan Palmer*

Kathryn Ali
Meghan Palmer
ALI & LOCKWOOD LLP
501 H St NE, Suite 200
Washington, D.C. 20002
(202) 651-2475
katie.ali@alilockwood.com
meghan.palmer@alilockwood.com

*Counsel for Plaintiff-Appellant Shannon
Wayne Agofsky*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 28(a)(10) and 32(g)(1), I hereby certify that the foregoing Reply Brief for Appellant complies with the type-volume limitations of Federal Rules of Appellate Procedure 32(a)(7)(B)(ii) and Circuit Rule 32(c). According to the word count feature of Microsoft Word, the word-processing system used to prepare the brief, the brief contains 6,998 words.

I further certify that the foregoing brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: October 16, 2024        /s/ *Meghan Palmer*
                                                   Meghan Palmer

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Meghan Palmer*
Meghan Palmer